UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| New Prime, Inc.<br>a Nebraska corporation,<br><br>    Plaintiff<br>v.<br><br>Eaton Corporation,<br>an Ohio corporation<br>and<br>John Does 1-100,<br><br>    Defendants. | Case Number _____ |

## COMPLAINT

**COMES NOW** New Prime Inc., d/b/a Prime Inc., a Nebraska corporation, (hereinafter, "Prime"), by and through its attorney of record, Justin A. Collins, and for its cause of action against defendant Eaton Corporation, an Ohio corporation, (hereinafter, "Defendant"), and defendants John Does 1 through 100, states to the Court as follows:

### GENERAL ALLEGATIONS

1. Prime brings this action under the laws of the state of Missouri and under the antitrust laws of the United States for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1 and 2, and Section 3 of the Clayton Act, 15 U.S.C. §14. Prime's Complaint is based upon Defendant's anticompetitive and illegal conduct in connection with the market for Class 8 truck transmissions outfitted in heavy duty trucks. The allegations contained herein are offered by Prime's counsel after the discovery of Defendant's long standing practices of competition suppression and artificial price inflation.

2. Since 2006, Defendant has held substantially all the Class 8 transmission

1

marketplace. Prior thereto, from 1999 to 2006, Defendant faced competition from rival Meritor, who at times saw its share of the market grow to as much as 22% of the manual transmission market segment.

3. As a result of Meritor's success, Defendant initiated exclusionary actions to reduce customer access to Meritor transmissions in the Class 8 transmission market. One action taken by Defendant was to conspire with defendants John Doe 1 – 100, certain unidentified truck manufactures and/or distributors, ("OEMs"), to enter into exclusive contracts with Defendant. These contracts succeeded in largely suffocating Meritor's presence in the Class 8 truck transmission market. Defendant's anticompetitive and exclusionary acts directly caused artificial price spikes for Class 8 truck transmissions, causing direct financial harm to Prime in violation of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act and various Missouri state law claims.

4. As a direct result of Defendant's actions and its exclusionary agreements with the OEMs, Defendant was able to gain virtually exclusive control of the Class 8 commercial truck transmission market, a direct restraint of trade in violation of Section 1 of the Sherman Act.

5. Prime suffered harm from Defendant's scheme to foreclose competition in the Class 8 truck transmission market. Defendant's conduct effectively eliminated competition for Class 8 linehaul truck transmissions, causing Prime to pay artificially steepened prices for Class 8 linehaul truck transmissions, all while leaving no meaningful marketplace alternatives.

6. As alleged herein, Defendant's unlawful contracts and other exclusionary acts have unreasonably restrained trade in violation of Section 1 of the Sherman Act, and have also solidified Defendant's monopoly power in the United States market for Class 8 truck transmissions market space in violation of Section 2 of the Sherman Act and Section 3 of the Clayton Act. Such conduct was fraudulent under the state laws of Missouri, as Defendant also competed unfairly and was

unjustly enriched.

7. As a direct result of the reduction in competition in the Class 8 truck transmissions market and its submarkets caused by Defendant's violations of the antitrust laws, Prime was directly caused to overpay for vehicles that contain Class 8 linehaul transmissions throughout the defined period of harm, as alleged herein. In addition to direct financial harm, Defendant's conduct also directly harmed the Prime by reducing consumer choice and the incentives for innovation in heavy duty truck transmissions.

## JURISDICTION AND VENUE

8. The claims filed herein arise under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1 and 2, and Section 3 of the Clayton Act, 15 U.S.C. §14.

9. The Court has subject matter jurisdiction pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, and under 28 U.S.C. §1331 and 28 U.S.C. §1337(a).

10. Venue in this District is proper pursuant to 28 U.S.C. §1391(b) and §1391(c) and Section 12 of the Clayton Act, 15 U.S.C. §22, as Defendant regularly conducted business, can be found, and transacted with Prime and other comparably situated consumers in this District.

11. Defendant, both individually and by means of its relationships with various OEMs, sells, markets, and distributes Class 8 truck transmissions throughout United States, including this District, the commercial dealings of which involve the sale of manufactured truck parts across state lines.

## THE PARTIES

12. Prime is a Nebraska corporation, with its principal place of business located in Springfield, Greene County, Missouri involves itself in the business of commercial interstate trucking.

13. Defendant is a corporation that is organized under, and exists within the laws of the State of Ohio, with its principal place of business in Troy, Michigan. During all relevant times, manufactured, sold and marketed Class 8 truck transmissions in the United States market through its vast network of OEMs by virtue of exclusive contracts that ensured only its make of Class 8 transmissions were included in commercial trucks.

14. Defendants John Doe 1 – 100 are currently unidentified OEMs which conspired with Defendant and contributed to Defendant's anticompetitive activities. John Does 1 – 100 include, without limitation, OEM's which sold Class 8 truck transmissions directly to Prime.

## MARKET SEGEMENT/COMMERICAL TRADE PARTICULARS

15. Prime purchased exclusively Class 8 vehicles for inclusion in its fleet of trucks. Class 8 vehicles involve the heaviest class of tractor equipment, weighing in excess of 33,000 pounds. Class 8 truck transmissions are configured to accommodate the high torque generated by the diesel engines that power this heavy truck equipment.

16. In the year 2005 alone, transmission manufacturers sold over 325,000 Class 8 truck transmissions, garnering revenues in excess of $1 billion.

17. Of all sales involving Class 8 truck transmissions, Defendant controlled at least 90% of the market.

18. Linehaul trucks are customarily outfitted with manual 9- and 10-speed transmissions with an accelerator, brake, and clutch pedal. Approximately 70% of Class 8 truck transmissions are used in the linehaul market to service carriers like Prime who enlist heavy Class 8 equipment to undertake over-the-road freight transit. Prime exclusively employs Class 8 trucks to effectuate its long distance freight carriage across the nation's highways.

19. Defendant strategically positioned itself to capture, and permanently secure, its

4

monopoly power in the Class 8 linehaul transmission market. Across the 1999 to 2006 period of alleged harm, Defendant captured a market share of approximately 90%.

20. Prohibitively forbidding barriers to entry exist as it respects the Class 8 truck transmission market. Entrants and existing competitors face a high fixed cost structure to bring competitive products to market. Very substantial investments in marketing, sales, service, and related warranty offerings, are required to win over a market share of any economic significance.

21. Defendant conspired with OEMs to ensure that Defendant secured, and retained, in excess of 90% share of the market, in an effort to effectively freeze out any prospective entrants into the Class 8 truck transmission market. Within the last three decades, only Meritor, and only for a punctuated time on or around 1999, managed to secure a market share of any commercial significance in the Class 8 transmission segment.

22. Defendant recognized Meritor as a potential threat to Defendant's market share. To fortify the dominance of its market domination, Defendant undertook exclusionary conduct, namely exclusive contract practices and like arrangements, that were aimed at substantially eliminating competition. Defendant soon succeeded in driving Meritor from the Class 8 manual transmission market by 2007.

23. Defendant structured arrangements with OEMs as a ploy to ensure that these OEMs would opt against the inclusion of Meritor transmissions within their tractor equipment. To do so, Defendant illegally structured its anticompetitive arrangements with OEMs that, among other things, involved reducing the residual values to be paid for trucks sold with transmissions other than Defendant's, refusing to provide financing to customers that specified a transmissions other than Defendant's, excluding other transmission makes from warranty programs, and falsely informing customers that competitor transmissions were unavailable, though they were installation-

5

ready.

24. Through Defendant's determined anticompetitive conduct, Defendant had cleared the Class 8 transmission market space of any meaningful competition. Such activity directly and proximately harmed Prime, who was forced to pay artificially elevated prices while being offered no meaningful marketplace alternative for Class 8.

25. Defendant's anticompetitive conduct directly caused Prime antitrust injury, as Defendant foreclosed competition for Class 8 truck transmissions, artificially inflating the prices of such transmissions while simultaneously ridding the marketplace of meaningful brand alternatives.

26. Because Defendant did not disclose the existence or nature of its anticompetitive conduct to Prime, Prime could not have reasonably discovered Defendant's unlawful conduct at the time of its commission, though Prime did discover Defendant's wrongdoing at some point within the five (5) years preceding the filing of this Complaint.

27. The illegal acts of Defendant from 1999-2006, including acts in furtherance of its exclusivity and price hike conspiracies, were wrongfully concealed and carried out in a manner that precluded detection.

28. Defendant fraudulently concealed its participation in the conspiracy alleged herein by creating exclusive dealing contracts and then engaging in actions to ensure that the contracts succeeded in eliminating rival transmissions manufacturers from the Class 8 truck transmissions market. These actions included, but were not limited to, falsely informing customers that competing manufactured transmissions were unavailable and creating incentives related to financing, build dates and residual pricing that favored the use of Defendant transmissions over the transmissions made by rivals. Actions of this sort were self-concealing as Defendant strongly dis-incented customer migration to the manufactured transmissions of rivals without disclosing or otherwise

6

making known any of their conspiratorial methods for so doing.

29. Because of the carefully self-concealing nature of the Defendant's fraudulent and anti-competitive actions, Defendant's illegal acts went undiscoverable during the time such illegal acts were perpetrated.

30. Defendant intentionally fortified its monopolistic market power in the Class 8 truck transmission market. Defendant held the full power to control the price of such transmissions at artificially high profit margins, without sacrificing sales volume.

31. Control of the market for Class 8 truck transmissions was all that was needed to maintain artificially high prices of Class 8 truck transmissions prices.

32. Defendant sold various OEMs Class 8 truck transmissions, including linehaul transmissions, at prices that far exceeded any market-borne cost structure and yielded illicitly generated profit margins.

33. Defendant possessed the power to, and ultimately did, exclude competition for Class 8 truck transmissions, including linehaul transmissions.

34. The relevant product market in this case involves Class 8 truck transmissions. Prime now seeks damages for the harm caused to it by Defendant's restraint of trade, monopolization and exclusionary conduct in the market for linehaul transmissions.

35. The geographic market for Class 8 truck transmissions is the contiguous United States. Such geographic identification is relevant as transmissions used in Class 8 vehicles in the United States are different from transmissions used in Class 8 vehicles in other regions of the world. It is, therefore, virtually a commercial impossibility for commercial truck purchasers to practicably shop other regions of the world for transmissions to use in U.S. Class 8 truck equipment.

## FIRST CAUSE OF ACTION
### (Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. §2)

36. Prime incorporates by reference paragraphs 1 through 35.

37. Class 8 linehaul truck transmissions are the relevant product market in question. The United States is the relevant geographic market at issue.

38. During the times indicated herein, Defendant possessed monopoly power in the markets for Class 8 truck transmissions and linehaul transmissions. Barriers to entry were high in the transmission market. Defendant's exclusionary practices precluded any new market entrants to the Class 8 truck transmission market space.

39. Defendant extended its monopoly in the Class 8 transmission market segment by engaging in exclusionary, anticompetitive conduct that was knowingly suppressive of any meaningful market competition, thereby illegally constraining trade in the Class 8 transmission segment.

40. Defendant's anticompetitive conduct offers no commercially redeeming justifications.

41. As a direct, foreseeable, and proximate result of Defendant's exclusionary, anticompetitive conduct, Prime has been harmed, as marketplace competition has been suppressed.

42. As a result of Defendant's anticompetitive practices, Prime was required to pay artificially inflated prices for Class 8 linehaul across calendar years 1999-2006.

43. As demonstrated herein, Prime has been financially harmed as a direct result of Defendant's antitrust violations by paying artificially augmented prices for Class 8 linehaul truck transmissions.

8

**WHEREFORE**, PRIME requests judgment for treble its actual damages in a fair and reasonable amount to be determined at trial, for its costs and fees incurred herein and for such other relief as the Court deems just.

### SECOND CAUSE OF ACTION
### (Exclusionary and Eliminative Conduct in Violation of Section 3 of the Clayton Act, 15 U.S.C. §14)

44. Prime incorporates by reference paragraphs 1 through 43.

45. Defendant and the OEMs entered into contracts for the purchase of transmissions which contracts precluded OEMs from purchasing any make of transmission other than those manufactured by Defendant.

46. Sales of Defendant's transmissions, resulting from the exclusionary contracts with OEMs, allowed Defendant to suppress competition in the market placing, thereby securing for Defendant some 90% of the Class 8 truck transmissions market space.

47. The anticompetitive effects of Defendant's exclusionary contracts with the OEMs vastly outweigh any pro-market justifications that Defendant might claim to exist.

48. As a direct, foreseeable, and proximate result of Defendant's exclusionary, anticompetitive contracts with the OEMs, Defendant and the OEMs have harmed Prime, directly causing an artificial inflation of prices of Class 8 transmissions and suppressing consumer choice.

**WHEREFORE**, PRIME requests judgment for treble its actual damages in a fair and reasonable amount to be determined at trial, for its costs and fees incurred herein and for such other relief as the Court deems just.

## THIRD CAUSE OF ACTION
### Exclusionary Conduct and Combinative Activity
### In Violation of Section 1 of the Sherman Act, 15 U.S.C. §1

49. Prime incorporates by reference paragraphs 1 through 48.

50. To the extent that a relevant market needs to be identified, the relevant product market is that of Class 8 transmissions sold in the United States.

51. Defendant and the OEMs combined, conspired, and contracted among themselves to restrain trade, and competition in an effort to expel any rival transmissions manufacturers of Class 8 linehaul transmissions, in violation of 15 U.S.C. §1.

52. Prime has been directly and substantially harmed in its commercial dealings by reason of Defendant's antitrust violations. Prime was financially injured by having to pay higher than market justified prices for Class 8 linehaul transmissions in the United States.

**WHEREFORE**, PRIME requests judgment for treble its actual damages in a fair and reasonable amount to be determined at trial, for its costs and fees incurred herein and for such other relief as the Court deems just.

## FOURTH CAUSE OF ACTION
### (Fraud)

53. The allegations set forth in paragraphs 1 through 52 above are incorporated herein.

54. Defendant, through its actions, and through its calculated contractual dealings with OEMs, suppressed competition in the subject market, thereafter allowing Defendant to institute substantial, artificially elevated price increases on its manufactured Class 8 transmissions.

55. Defendant knew that by requiring OEMs to offer only its transmission in Class 8 trucks, it would benefit from enhanced sales resulting from its market share command, while also widening its profit margin on each unit sold.

56. Defendant intended for OEMs to carry only its Class 8 manufactured transmissions in a forced product offerings that required OEMs to purchase, and then sell to consumers, only transmissions branded by Defendant, in a calculated and concerted effort to fraudulently enhance its market share while driving up the price of each transmission unit sold.

57. Prime reasonably relied upon the representations directly structured by Defendant in the Class 8 tractor market place, when purchasing truck transmissions.

58. As a result of such reliance, Prime was substantially harmed by the artificially elevated Class 8 transmission prices, while also being deprived of any meaningful brand selection during the 1999-2006 purchasing period for Class 8 truck equipment.

59. Defendant's acts were willful and intentional and/or in reckless disregard of the rights of others and entitle Prime to punitive damages in an amount sufficient to deter Defendant and others from like conduct in the future.

**WHEREFORE**, PRIME requests judgment for its actual damages in a fair and reasonable amount to be determined at trial, for punitive damages in an amount sufficient to deter Defendant and others from like conduct in the future, for its costs and fees incurred herein and for such other relief as the Court deems just.

### FIFTH CAUSE OF ACTION
**(Unfair Competition)**

60. The allegations set forth in paragraphs 1 through 59 above are incorporated herein.

61. Defendant engaged in the practice of conspiring with OEMs by requiring exclusive contracts, or other long term agreements, with OEMs to equip tractor equipment only with Defendant's brand of transmission, financially harming Prime to a material extent.

11

62. Defendant's behavior was willful, calculated, unethical, and entirely indefensible, the harm of which is reducible to exact calculation and statutorily prescribed remedy.

63. As a result of Defendant's acts, Prime was substantially harmed by the artificially elevated Class 8 transmission prices, while also being deprived of any meaningful brand selection during the 1999-2006 purchasing period for Class 8 truck equipment.

64. Defendant's acts were willful and intentional and/or in reckless disregard of the rights of others and entitle Prime to punitive damages in an amount sufficient to deter Defendant and others from like conduct in the future.

**WHEREFORE**, PRIME requests judgment for its actual damages in a fair and reasonable amount to be determined at trial, for punitive damages in an amount sufficient to deter Defendant and others from like conduct in the future, for its costs and fees incurred herein and for such other relief as the Court deems just.

## SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

65. The allegations set forth in paragraphs 1 through 64 above are incorporated herein

66. Prime's payments to various OEMs for new Class 8 transmission were artificially greater than what market forces would otherwise compel in the absence of Defendant's constraint of trade, and other restraining and combinative behaviors that artificially augmented the per unit cost of its manufactured transmissions.

67. Defendant had direct knowledge that the exclusive arrangements would vastly enhance its market share, allowing Defendant to induce artificially high prices for its manufactured transmissions.

68. Defendant did charge artificially his prices for its manufactured transmission.

69. Defendant failed to publish or otherwise make known its exclusivity arrangement with OEMs as it clandestinely sought to enrich itself at the direct expensive of consumers, Prime included.

70. As a direct result of Defendant's acts, Prime was substantially harmed by the artificially elevated Class 8 transmission prices, while also being deprived of any meaningful brand selection during the 1999-2006 purchasing period for Class 8 truck equipment.

**WHEREFORE**, PRIME requests judgment for its actual damages in a fair and reasonable amount to be determined at trial, for its costs and fees incurred herein and for such other relief as the Court deems just.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Prime demands a trial by jury of all claims asserted in this Complaint.

NEW PRIME, INC.
By: /s/ Justin A. Collins
Justin A. Collins
Missouri Bar Number 65388
2740 North Mayfair
Post Office Box 4208
Springfield, Missouri 65808-4208
Telephone: (417) 521-3162
Facsimile: (800) 454-4782
E-mail: JCollins@primeinc.com

HOSMER KING & ROYCE, LLC
By: /s/ Stuart H. King
Stuart H. King
Missouri Bar Number 39410
313 South Glenstone Avenue
Springfield, Missouri 65802
Telephone: (417) 869-9999
Facsimile: (417) 869-9999
E-mail: stuart.king@hkrlawoffice.com

13