IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| *NEW PRIME, INC.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Cause No. 6:16-cv-03407-REL |
| *EATON CORPORATION, and* | ) | |
| *JOHN DOES 1-100,* | ) | |
| | ) | |
| Defendants. | ) | |

## SUGGESTIONS IN SUPPORT OF DEFENDANT
## EATON CORPORATION'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................. 3

   I.    ILLINOIS BRICK MANDATES DISMISSAL OF PRIME'S CLAIMS .......................... 4

   II.   ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED................................. 6

   III.  EACH OF PLAINTIFF'S CLAIMS IS DEFECTIVE AS A MATTER OF LAW ......... 10

     A.   Plaintiff Has Not Adequately Pled Antitrust Injury Caused by Eaton's Alleged Wrongdoing........................................................................... 12

     B.   Plaintiff Fails to Allege Any Facts Supporting An Alleged Anticompetitive Agreement ............................................................................. 12

   IV.  PLAINTIFF'S UNJUST ENRICHMENT, FRAUD, AND UNFAIR COMPETITION CLAIMS ARE DEFECTIVE AS A MATTER OF LAW ................................. 13

   V.   PRIME FAILS TO PLEAD ITS FRAUD CLAIM WITH PARTICULARITY ............. 14

CONCLUSION...........................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AGI-Bluff Manor, Inc. v. Reagen*,
  713 F. Supp. 1535 (W.D. Mo. 1989) ...................................................................14

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ...........................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .........................2, 10, 12

*Associated Gen. Contractors of California, Inc. v. California. State Council of*
  *Carpenters*,
  459 U.S. 519, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983) .........................................11

*Baden v. Craig-Hallum, Inc.*,
  646 F. Supp. 483 (D. Minn. 1986) ........................................................................6

*Barkley v. Woodbury Cty., Iowa*,
  874 F. Supp. 2d 759 (N.D. Iowa 2012) ................................................................10

*Bd. of Regents of Univ. of State of N. Y. v. Tomanio*,
  446 U.S. 478, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980) .......................................9

*Beckers v. Int'l Snowmobile Indus. Ass'n*,
  581 F.2d 1308 (8th Cir. 1978) ..............................................................................1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)
  ..........................................................................................................2, 10, 11, 12

*Benson v. Richardson*,
  1990 U.S. Dist. LEXIS 18784 (D. Iowa 1990) ........................................................8

*Black & Yates, Inc. v. Mahogany Ass'n, Inc.*,
  No. 7561, 1942 WL 53456 (3d Cir. June 10, 1942) ...............................................11

*Bryant v. Brooklyn Barbeque Corp.*,
  130 F.R.D. 665 (W.D. Mo. 1990), *aff'd sub nom. Bryant v. Brooklyn*
  *Barbecue Corp.*, 932 F.2d 697 (8th Cir. 1991) .....................................................14

*Campos v. Ticketmaster Corp.*,
  140 F.3d 1166 (8th Cir. 1998) ..............................................................................4

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104, 107 S. Ct. 484, 93 L. Ed. 2d 427 (1986).........................................12

*Dekro v. Stern Bros. & Co.*,
    540 F. Supp. 406 (W.D. Mo. 1982) ............................................................8

*DM Research, Inc. v. Coll. Of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999)........................................................................10

*Fiene v. V & J Foods, Inc.*,
    962 F. Supp. 1172 (E.D. Wis. 1997)............................................................8

*Ginsburg v. InBev NV/SA*,
    623 F.3d 1229 (8th Cir. 2010) ...................................................................4

*Grawitch v. Charter Commc'ns, Inc.*,
    750 F.3d 956 (8th Cir. 2014) .....................................................................10

*Great Plains Trust Co. v. Union Pac. R. Co.*,
    492 F.3d 986 (8th Cir. 2007) .....................................................................9

*Hedges v. Dixon Cty.*,
    150 U.S. 182, 14 S. Ct. 71, 37 L. Ed. 1044 (1893) .....................................5

*Hill v. Der*,
    521 F. Supp. 1370 (D. Del. 1981)...............................................................7

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*,
    424 F.3d 363 (3d Cir. 2005)......................................................................5

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)...........................1, 4, 5, 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) .....................................................................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................6

*In re Flonase Antitrust Litig.*,
    610 F. Supp. 2d 409 (E.D. Pa. 2009) ........................................................13

*In re Midwest Milk Monopolization Litig.*,
    529 F. Supp. 1326 (W.D. Mo. 1982), *aff'd*, 730 F.2d 528 (8th Cir. 1984)................4

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    834 F.3d 943 (8th Cir. 2016) .....................................................................8

*In re Terazosin Hydrochloride Antirtust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .................................................................6

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................5

*In re Wyoming Tight Sands Antitrust Cases*,
    866 F.2d 1286 (10th Cir. 1989), *aff'd sub nom. Kansas v. UtiliCorp United,*
    *Inc.*, 497 U.S. 199, 110 S. Ct. 2807, 111 L. Ed. 2d 169 (1990)..............................5

*Knuth v. Erie-Crawford Dairy Co-op. Ass'n*,
    463 F.2d 470 (3rd Cir. 1972) ...........................................................................9

*Kujak v. http://www.MNCIS.com*,
    No. CIV. 13-786 .........................................................................................13

*Mest v. Cabot Corp.*,
    449 F.3d 502 (3rd Cir. 2006) ...........................................................................9

*Nelson v. County of Allegheny*,
    60 F.3d 1010 (3d Cir. 1995).............................................................................10

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ...........................................................................12

*Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Deckert*,
    123 F.2d 979 (3d Cir. 1941)............................................................................7

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
    263 F.R.D. 205 (E.D. Pa. 2009)........................................................................6

*Sofka v. Thal*,
    662 S.W.2d 502 (Mo. 1983) ...........................................................................15

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*,
    781 F.3d 1003 (8th Cir. 2015) .........................................................................14

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) ...........................................................................14

*Westerman v. United States*,
    718 F.3d 743 (8th Cir. 2013) ...........................................................................6

*Wilden Clinic, Inc. v. City of Des Moines*,
    229 N.W.2d 286 (Iowa 1975) ..........................................................................8

*Wood v. Carpenter*,
    101 U.S. 135, 25 L. Ed. 807 (1879) ...................................................................9

*Zaccarello v. Medtronic, Inc.*,
    38 F. Supp. 3d 1061 (W.D. Mo. 2014) ...................................................................................14

**STATUTES**

15 U.S.C. § 15(a) ............................................................................................................2, 12

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b)(6) ...........................................................................................................1

FED. R. CIV. P. 9(b) .............................................................................................................3, 8

FED. R. CIV. P. 11 ..................................................................................................................11

# INTRODUCTION

Defendant Eaton Corporation ("Eaton") submits its suggestions in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Complaint contains critical defects that require the dismissal of the case in its entirety.

*First*, New Prime ("Prime") is an indirect purchaser of Class 8 truck transmissions and is thus barred as a matter of decades-old Supreme Court and Eighth Circuit law from bringing any of its antitrust or common law claims. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) ("[i]n elevating direct purchasers to a preferred position as private attorneys general, [our case law] denies recovery to those indirect purchasers who may have been actually injured by antitrust violations."); *Beckers v. Int'l Snowmobile Indus. Ass'n*, 581 F.2d 1308, 1310 (8th Cir. 1978) (affirming district court's holding that "as 'indirect purchasers,' appellants were precluded from maintaining their action under *Illinois Brick* . . ."). Prime alleges in its Complaint that Eaton's conduct "caused artificial price spikes for Class 8 truck ***transmissions***," which "caused [Prime] to overpay for ***vehicles*** that contain Class 8 linehaul transmissions" that Prime purchased from OEM truck manufacturers. (Plaintiff's Complaint [Doc. 1] (hereinafter "Compl.") ¶¶ 3, 7, 19) (emphases added). Prime does not and cannot allege that it bought Class 8 linehaul transmissions *direct*ly from Eaton. Prime's federal antitrust claims are thus barred as a matter of law by *Illinois Brick*. Moreover, as plaintiffs are precluded from bringing common law claims as a "back door" to recover for claims barred under the antitrust statutes, their common law claims for fraud, unfair competition, and unjust enrichment are similarly barred.

*Second*, all of Prime's claims are time barred. As an initial matter, Prime fails to plead facts identifying a single truck or transmission purchase made within the four-year statute of limitations. This alone is fatal to Prime's claims. Moreover, Prime knew or should have known of its claim at the time it was allegedly harmed when it bought unidentified trucks at "artificially

elevated prices" "during the 1999 to 2006 period of alleged harm." (Compl. ¶¶ 19, 58 *see also* ¶ 27, 42, 63, 70). Prime's Complaint thus establishes the statute of limitations began to run on its claims *over 17 years ago* in 1999.

At the latest, Prime knew or should have known about the purported conduct that gave rise to its claims on October 5, 2006, when the complaint was filed in *ZF Meritor LLC and Meritor Transmission Corp. v. Eaton Corp.* ("*ZF Meritor*"). *ZF Meritor*, involving some of the same conduct alleged here, was widely publicized in 2006 and the complaint and other case materials have been publicly available *for over a decade*. Nonetheless, Prime waited until October 5, 2016, far outside the applicable statute of limitations, to file its Complaint.

*Third*, Prime's Complaint fails to plead any facts regarding antitrust injury, a critical element of the antitrust claims asserted in Counts I-III. *See* 15 U.S.C. § 15(a). The Complaint contains only boilerplate conclusions that Prime was caused to "overpay" for vehicles. No factual allegations are pled regarding which OEM(s) Prime bought from and when, what trucks were purchased, what transmissions they contained, and what prices Prime paid. Such bare pleading is insufficient as a matter of law under *Twombly* and *Iqbal*. There are no factual allegations supporting the counterintuitive claim that the OEMs, who purchased transmissions from Eaton, would have all conspired to install Eaton as an upstream monopolist, who then overcharged each of the OEMs for all of their Class 8 linehaul transmissions purchases.

*Fourth*, Prime's fraud, unfair competition, and unjust enrichment claims – untied to the law of any particular state – are deficient as a matter of law. (Counts IV-VI). Courts routinely dismiss such "generalized" claims on the basis that different states analyze these claims very differently, including the elements of the causes of action and their respective statutes of

limitation. It is thus impossible for the Court to determine whether Prime has alleged a prima facie case for any such claims.

*Fifth*, Prime's Complaint does not meet the requirements for particularized pleading of fraud under Fed. R. Civ. P. 9(b). Count IV contains only conclusory statements that do not pass muster under the particularized pleading standard required to support a fraud claim.

## NATURE AND STAGE OF THE PROCEEDINGS

Prime filed a Complaint on October 5, 2016 alleging that, from 1999 to 2006, Eaton conspired with "unidentified truck manufactures [sic] and/or distributors" (John Doe 1-100) "to enter into exclusive contracts" with Eaton. This in turn allegedly "caused artificial price spikes for Class 8 truck transmissions, causing direct financial harm to Prime." Prime asserts claims under: (i) Section 2 of the Sherman Act (Count I); (ii) Section 3 of the Clayton Act (Count II); (iii) Section 1 of the Sherman Act (Count III); (iv) a generalized fraud claim – untied to any particular state law (Count IV); (v) a generalized unfair competition claim – untied to any particular state law (Count V); and a generalized unjust enrichment claim – again, untied to any particular state law (Count VI). This motion is Eaton's first responsive pleading to the Complaint.

Prime's Complaint mirrors many of the allegations made in *ZF Meritor*, which was filed in the U.S. District Court for the District of Delaware in October 2006. (D. Del. No. 06-623). Prime's Complaint is also materially identical to follow-on antitrust and unfair competition claims filed by a putative class of indirect transmission purchasers filed in the District of Delaware on October 4, 2010. (D. Del. No. 11-cv-00009). On October 21, 2015, the Delaware court denied the indirect purchasers' motion for class certification, holding that plaintiffs there failed to establish antitrust impact and injury through common proof, and dismissed the action. [Dkt. 327]. The decision is currently on appeal before the Third Circuit.

Active 31642350.1
8028394.1

3

# I.   ILLINOIS BRICK MANDATES DISMISSAL OF PRIME'S CLAIMS

Plaintiff is an indirect purchaser of Eaton's transmissions. As a result, its antitrust claims against Eaton are barred under *Illinois Brick*. In *Illinois Brick*, the Supreme Court established a bright-line rule: indirect purchasers cannot recover antitrust damages. *Illinois Brick Co.*, 431 U.S. at 746. The Supreme Court designed this bar to maximize the incentive of direct purchasers to enforce the antitrust laws and to avoid embroiling courts in apportioning damages claims between direct purchasers and one or more levels of indirect purchasers. *See id.* at 746 ("[i]n elevating direct purchasers to a preferred position as private attorneys general, [our case law] denies recovery to those indirect purchasers who may have been actually injured by antitrust violations.").

The Complaint is clear on this point: Plaintiff did not purchase any transmissions directly from Eaton. Instead, the Complaint alleges that Eaton's conduct "caused artificial price spikes for Class 8 truck *transmissions*," which caused Plaintiff to "overpay for *vehicles* that contain Class 8 linehaul transmissions" that Prime purchased from unidentified OEMs. (Compl. ¶¶ 3, 7, 19.) Plaintiff does not (and cannot) allege that it purchased Class 8 linehaul transmissions *directly* from Eaton. This Court and the Eighth Circuit have followed *Illinois Brick's* indirect purchaser bar for decades. *See Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 (8th Cir. 2010) ("As indirect purchasers, [plaintiffs] may not sue for damages under the Clayton Act.") (citing *Illinois Brick*, 431 U.S. at 734–35); *In re Midwest Milk Monopolization Litig.*, 529 F. Supp. 1326, 1340-1342 (W.D. Mo. 1982) (granting partial summary judgment where plaintiffs were barred by the Illinois Brick indirect purchaser rule), *aff'd*, 730 F.2d 528 (8th Cir. 1984).[1]

---

[1] *See also Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1169-70 (8th Cir. 1998) ("An indirect purchaser is one who bears some portion of a monopoly overcharge only by virtue of an antecedent transaction between the monopolist and another, independent purchaser. Such indirect purchasers may not sue to recover damages for the portion of the overcharge they bear.

Other Circuits, too, have consistently dismissed indirect purchaser claims under *Illinois Brick*. *See, e.g., Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 366 (3d Cir. 2005) ("indirect purchaser plaintiffs do not have statutory standing to recover for 'passed-on' overcharges."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997) ("[t]his is just the kind of complaint that *Illinois Brick* bars. The only entities permitted to complain about the manufacturers' overcharging the wholesalers are the wholesalers themselves, the direct purchasers, even if every cent of the overcharge was promptly and fully passed on to the [plaintiffs] in the form of a higher wholesale price."); *In re Wyoming Tight Sands Antitrust Cases*, 866 F.2d 1286, 1294 (10th Cir. 1989) ("indirect purchasers of natural gas are not entitled to sue"), *aff'd sub nom. Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990). Thus, as Plaintiff was an indirect purchaser of Eaton's Class 8 transmissions, its antitrust claims against Eaton are barred under *Illinois Brick*.[2]

Prime's common law claims for fraud, unfair competition, and unjust enrichment are also barred under *Illinois Brick*. (Counts (IV-VI). When a statute bars a plaintiff's right to recover damages, the plaintiff cannot seek the same damages through non-statutory, common law claims. *See Hedges v. Dixon Cty.*, 150 U.S. 182, 192 (1893) (where "the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation . . . Courts of equity can no more disregard statutory . . .

---

The right to sue for damages rests with the direct purchasers, who participate in the antecedent transaction with the monopolist.").

[2] The Supreme Court has created only two narrow exceptions to its bar on indirect purchaser damages suits, neither of which apply here. First, there is no allegation that any OEM that sold trucks directly to Prime was "owned or controlled" by Eaton or by Prime. *See Illinois Brick*, 431 U.S. at 736 n. 16. Second, there is no allegation that any OEM had a "cost-plus" contract with Eaton that required an OEM to pass on any alleged overcharge to Plaintiff. *Id.* at 733 n.12. The Supreme Court has flatly refused to create additional exceptions to the *Illinois Brick* bar on indirect purchaser suits. *See UtiliCorp United,* 497 U.S. at 208.

requirements and provisions than can courts of law."); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("Ohio, for example, would disallow a claim for unjust enrichment in this case for the same reasons that it disallows the circumvention of its antitrust laws through a claim based on deceptive trade practices."); *Westerman v. United States*, 718 F.3d 743, 752 (8th Cir. 2013) (Plaintiff "ignores one of the most fundamental principles of equity: *equitas sequiter legem* (i.e., equity follows the law"); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365 at 1379-80 (S.D. Fla. 2001) (dismissing indirect purchasers' unjust enrichment claims that were based upon the same facts as claims barred under state antitrust laws because permitting them would "undermine the efficient enforcement of antitrust laws."); September 30, 2010, the Special Master Report and Recommendation in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1026 (N.D. Cal. 2010) (holding that the common law claims the plaintiff brought under Wisconsin law, including the unjust enrichment claims, should be dismissed); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 215 (E.D. Pa. 2009) ("if a state . . . prohibits claims against an antitrust defendant under its antitrust and consumer protection statutes, plaintiffs foreclosed from statutory relief may be circumventing this legislative decision by seeking equitable relief . . . ."). Thus, even if Plaintiffs had tied their claims to the laws of a particular state, they would still be barred under *Illinois Brick*.

## II.     ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's Complaint fails to allege facts identifying a single truck or transmission purchase within the four-year period prior to filing its Complaint on October 5, 2016—or the decade before that. Instead, Plaintiff generically alleges that it purchased unidentified trucks with unidentified transmissions from unidentified OEMs (not Eaton) at unspecified times—ten to fifteen years ago. (Compl. ¶ 19) ("[a]cross the 1999 to 2006 period of alleged harm."). It is

Plaintiff's burden to plead factual allegations demonstrating it satisfies the statute of limitations. *See, e.g.*, *Baden v. Craig-Hallum, Inc.*, 646 F. Supp. 483, 487 n.2 (D. Minn. 1986) ("The general rule in the federal courts is that where the very statute which creates the cause of action also contains a limitation period, the statute of limitations not only bars the remedy, but also destroys the liability, and hence, plaintiff must *plead and prove* facts showing that he is within the statute.") (emphasis in original). *See also Pennsylvania Co. for Insurances on Lives & Granting Annuities v. Deckert*, 123 F.2d 979, 985 (3d Cir. 1941) ("It has been held almost universally that when a statute creating a new cause of action contains itself a statute of limitations, the limitation imposed becomes an integral part of the right of action created by the statute"); *Hill v. Der*, 521 F. Supp. 1370, 1388-89 (D. Del. 1981) ("[W]hen the very statute which creates the cause of action contains a limitations provision, the plaintiff must plead sufficient facts to demonstrate that he is not barred ....").

Moreover, the face of the Complaint establishes that Prime's claims are untimely. Prime pleads that it was "substantially harmed by … artificially elevated Class 8 transmission prices" "[a]cross the 1999 to 2006 period of alleged harm." (Compl. ¶¶ 19, 58 *see also* ¶¶ 27, 42, 63, 70.) Plaintiff's allegations thus establish that it knew or should have known of its claims in 1999, but inexplicably waited *over seventeen years* to file its Complaint.

At the very latest, Plaintiff knew or should have known about the purported conduct that gave rise to its claims *over ten years ago*. In October 2006, the complaint was filed in *ZF Meritor*. The case was widely publicized at the time it was filed and the complaint and literally hundreds of other case materials, including much of the discovery record, trial witness lists, trial transcripts from the month long trial, trial exhibits, and other case materials have been publicly available for many years.

Plaintiff nonetheless elected to wait until seventeen years after its initial alleged "harm" and over ten years after *ZF Meritor* was filed before finally filing its own claim in October 2016. The Eighth Circuit has made clear that such unjustified delay demands dismissal of the Complaint—especially where the delay is in the face of public knowledge of an alleged anticompetitive act in the form of a prior filed antitrust action. *In re Pre-Filled Propane Tank Antitrust Litig.*, 834 F.3d 943, 950 (8th Cir. 2016), *as corrected* (Aug. 25, 2016) (affirming district court's dismissal of a complaint because the statute of limitations had run where the only specific conspiratorial acts alleged in Plaintiffs' complaint occurred outside the statute of limitations and plaintiffs were put on notice of an alleged conspiracy when a first class action was filed) (emphasis added).

Moreover, Prime's untimely Complaint cannot be saved through its generic allegations of "fraudulent concealment." (Compl. ¶¶ 26-29). The "fraudulent concealment" portion of the Complaint falls far short of meeting the particularity requirement demanded by Fed. R. Civ. P. 9(b). The Complaint does not allege any particular statement by Eaton, let alone facts suggesting that it made a false statement, and that Plaintiff relied upon that false statement. The allegation that, "[b]ecause Defendant did not disclose the existence or nature of its anticompetitive conduct to Prime, Prime could not have reasonably discovered Defendant's unlawful conduct at the time of its commission," (Compl. ¶¶ 26, 28, 29) is insufficient as a matter of law. *See Dekro v. Stern Bros. & Co.*, 540 F. Supp. 406, 414 (W.D. Mo. 1982) ("Since deception is the *sine qua non* of fraud, a plaintiff who seeks to invoke the protection of [the] equitable tolling doctrine must show that the defendant engaged in tactics of concealment which extend beyond the original, underlying fraud-i.e. a coverup."); *Benson v. Richardson*, 1990 U.S. Dist. LEXIS 18784 at *3 (D. Iowa 1990) ("as a general rule, to constitute fraud by concealment or suppression of the truth

there must be something more than mere silence or a mere failure to disclose known facts") (*quoting Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286, 292 (Iowa 1975)); *Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1183 (E.D. Wis. 1997) ("Concealment by mere silence is not enough.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry") (*quoting Wood v. Carpenter*, 101 U.S. 135, 143 (1879)); *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3rd Cir. 2006) ("Under the doctrine of fraudulent concealment, '[t]here must be an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury.' Silence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence.") (citation omitted); *Knuth v. Erie-Crawford Dairy Co-op. Ass'n*, 463 F.2d 470, 482 (3rd Cir. 1972) ("the concealment which tolls the statute must be in an affirmative, independent act of concealment; mere silence or nondisclosure, even by corporate officials, is not enough.").

Indeed, as held by the Western District in *White v. CTX Mortg., LLC*, "[t]o establish a claim of fraudulent concealment to equitably toll a federal claim, the plaintiff must plead with particularity the 'who, what, when, where, and how' of the alleged fraudulent act . . . Under this standard, 'conclusory legal allegations' do not establish fraudulent concealment."  No. 13-0335-CV-W-DGK, 2014 WL 1806705, at *4 (W.D. Mo. May 7, 2014) (citing *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007)).  None of Plaintiffs' allegations establish the who, what, when, where, or how of any alleged fraudulent acts as required to invoke equitable tolling.  "Statutes of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents*

*of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 487 (1980). Prime's claims should thus be dismissed as barred by the statute of limitations.[3]

## III. EACH OF PLAINTIFF'S CLAIMS IS DEFECTIVE AS A MATTER OF LAW

Supreme Court precedent makes clear that a complaint is valid only if it contains *factual* allegations which, if accepted as true on a motion to dismiss, meet all of the elements of a cause of action. Boilerplate and nonsensical conclusions, without more, fail as a matter of law. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

The Eighth Circuit and other Circuits have long followed this rule and dismissed complaints that rely only on boilerplate allegations for essential elements of a claim. *See e.g.*, *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) (affirming dismissal of

---

[3] Nor does "*American Pipe*" or "class action" tolling apply here. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552-54 (1974) (filing of federal class action tolls statute of limitations for claims by putative members during pendency of the action). The statute of limitations expired years before the Delaware complaint was filed on October 4, 2010, and thus cannot save Prime's already stale claims. Moreover, even if tolling applied, the limitations period began to run again once the Delaware court denied the motion for class certification on October 21, 2015. *See Nelson v. County of Allegheny*, 60 F.3d 1010, 1012-13 (3d Cir. 1995) (class action tolling extends only until the denial of class certification, not during an appeal of that decision); *Barkley v. Woodbury Cty., Iowa*, 874 F. Supp. 2d 759, 778 (N.D. Iowa 2012) (explaining that "the Eighth Circuit Court of Appeals would join its sister circuits in holding that *American Pipe* tolling ends with the district court's decision denying class certification, not with a decision on any interlocutory appeal. . . . To treat the district court's denial of class certification essentially as a nullity, for purposes of determining when *American Pipe* tolling ends, just because a party attempts an interlocutory appeal of that order, flies in the face of the goal of prompt determination of the viability of class actions."). Prime's Complaint falls outside the limitations period under any interpretation of the facts and law.

plaintiffs' complaint for failure to plead facts sufficient to demonstrate an essential elements of plaintiffs' claim holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim that is plausible on its face.) (citing *Iqbal*, 556 U.S. at 678); *DM Research, Inc. v. Coll. Of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege *actual* predicate concrete enough to warrant further proceedings .... Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.") (emphasis added); *Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231-32 (3d Cir. 1941) ("a general allegation of conspiracy without a statement of facts is an allegation of a legal conclusion and insufficient of itself to state a cause of action.").

The reason for this rule is obvious: it forces a plaintiff to comply with its Rule 11 obligation to conduct a reasonable inquiry into the facts *before* filing its lawsuit and prevents a meritless case and boilerplate allegations from burdening defendants and the Court.  A plaintiff that fails to plead the required facts should not be permitted to force defendants to incur "the potentially enormous expense of discovery" based only on conclusory allegations of essential elements.  *Twombly*, 550 U.S. at 558  ("it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery ... but quite another to forget that proceeding to antitrust discovery can be expensive"); *Id.* at 573 ("[p]rivate antitrust litigation can be enormously expensive"); *Id.* at 559 ("It is no answer to say that a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through a 'careful case management plan.'"); *see also Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n. 17 (1983) (district courts have "the

power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed").

### A. Plaintiff Has Not Adequately Pled Antitrust Injury Caused by Eaton's Alleged Wrongdoing

Plaintiff's antitrust claims (Counts I-III) should be dismissed because the Complaint fails to plead ***any*** facts sufficient to establish a critical element of each of its claims: antitrust injury caused by some unlawful conduct. Instead, Plaintiff pleads a boilerplate conclusion—***and no facts***—regarding antitrust injury. Antitrust injury is a required element of every antitrust claim. *Se*e 15 U.S.C. § 15(a) (2000); *see also Cargill, Inc. v. Monfort of Colorado, Inc*., 479 U.S. 104, 111 (1986) (Clayton Act "§ 4 requires a plaintiff to show actual injury ... of the type the antitrust laws were designed to prevent"); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (affirming dismissal under 12(b)(6) for failure to allege antitrust injury because the court "***must*** [] reject claims under Rule 12(b)(6) when antitrust standing is missing") (emphasis added).

Plaintiff's Complaint falls far short of this requirement, containing no facts at all supporting the conclusory assertion that Plaintiff had to "overpay" for vehicles. Indeed, the Complaint contains no facts at all regarding which OEM the Plaintiff bought from and when, what trucks it purchased, what transmissions they contained, and what prices it paid. The "formulaic recitation" that Plaintiff had to "overpay" thus fails as a matter of law. *Twombly*, 550 U.S. at 555, and *Iqbal*, 129 S. Ct. at 1949. Plaintiffs have failed to adequately plead antitrust injury and Counts I-III should be dismissed.

### B. Plaintiff Fails to Allege Any Facts Supporting An Alleged Anticompetitive Agreement

In *Twombly*, the Supreme Court dismissed the complaint because plaintiffs failed to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Here, Plaintiff's claim of an alleged conspiracy between numerous unidentified OEMs does not

even enter the realm of conceivability. Plaintiff alleges that the unidentified OEMs who purchased transmissions from Eaton would have all conspired to install Eaton as an upstream monopolist, *without alleging any facts establishing any communication from one OEM to another OEM, let alone an agreement among them to do something unlawful.* From the complete lack of any facts sufficient to infer any horizontal agreement among or parallel conduct by the OEMs, Plaintiff somehow concludes that the OEMs nevertheless did conspire to install and continued to support Eaton as a monopolist even as Eaton overcharged each OEM for all of their Class 8 linehaul transmission purchases. If true, these events would defy both common sense and fundamental economic logic. This is a basic pleading failure that is dispositive of all of Prime's claims. The Complaint, therefore, merits dismissal under *Twombly* and its progeny.

## IV.     PLAINTIFF'S UNJUST ENRICHMENT, FRAUD, AND UNFAIR COMPETITION CLAIMS ARE DEFECTIVE AS A MATTER OF LAW

Plaintiff's fraud, unfair competition, and unjust enrichment claims are not grounded in the law of any particular state. (Counts IV-VI). Such generic pleading fails to put Eaton on notice of the claims asserted against it and the claims should be dismissed. The *In Re Flonase Antitrust Litigation* court dismissed claims untethered to any state's law, on this precise ground, holding that, "[b]ecause states analyze unjust enrichment claims differently," the "Court cannot proceed without knowing which states' law to apply" to generalized common law claims. 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009). *See also Kujak v. http://www.MNCIS.com*, No. CIV. 13-786 JNE/JJK, 2013 WL 1900498, at *1, n.1 (D. Minn. Apr. 5, 2013), report and recommendation adopted, No. CIV. 13-786 JNE/JJK, 2013 WL 1900494 (D. Minn. May 7, 2013) (dismissing a case summarily for failure to state a claim under federal law and noting that "even if diversity jurisdiction could be established, this action still would have to be dismissed, because Plaintiff also has not identified any state law on which this lawsuit could be based.")

Without knowing which state's law applies, and thus the elements of each claim, it is impossible for the Court to assess whether Prime has alleged a *prima facie* claim. The Court should thus dismiss all of Prime's common law claims.

## V. PRIME FAILS TO PLEAD ITS FRAUD CLAIM WITH PARTICULARITY

In addition to failing to plead under which state's law it brings its fraud claim, Prime fails to allege any of the particularized allegations required by Rule 9(b). (Count IV). *See Zaccarello v. Medtronic, Inc.*, 38 F. Supp. 3d 1061, 1065 (W.D. Mo. 2014) ("Rule 9(b) establishes a heightened pleading standard for complaints alleging fraud. The law is clear; to survive a Rule 9(b) challenge, the complaint must plead 'such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.") (citing U. S.*ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)).

To satisfy this particularity requirement, the Complaint must set out Eaton's affirmative acts of fraud, including the date, place, and content of its statements, what particular facts indicate that the statements were fraudulent, and facts supporting a claim that the Plaintiff relied on those statements. *See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (affirming dismissal of a claim for not satisfying Rule 9(b) where plaintiffs only broadly alleged various wrongdoings, explaining that "[a] complaint subject to Rule 9(b) 'must identify who, what, where, when, and how.' . . . It must 'specify[ ] the time, place, and content of the defendant's false representations'") (citation omitted); *Bryant v. Brooklyn Barbeque Corp.*, 130 F.R.D. 665, 670 n.6 (W.D. Mo. 1990) ("Although plaintiff may have had an 'idea' that the claims were warranted, a complaint alleging fraud may be dismissed if not pled with sufficient particularity."), *aff'd sub nom. Bryant v. Brooklyn Barbecue Corp.*, 932 F.2d 697 (8th Cir. 1991); *AGI-Bluff Manor, Inc. v. Reagen*, 713 F. Supp. 1535, 1549 (W.D.

Mo. 1989) ("Allegations of fraud 'on information and belief,' however, do not meet the requirements of Rule 9(b)....Even where the details of the allegedly fraudulent acts are peculiarly within the adverse party's knowledge, Rule 9(b) still 'requires that a plaintiff allege sufficient detail to demonstrate that his complaint is grounded in *some* facts.') (citations omitted). Missouri state law echoes this requirement to plead *facts, with particularity*, in establishing a fraud claim.[4]

None of those required "time, place, and content" allegations are present here. Instead, the fraud allegations (¶¶ 26-9; 53-59) are overwhelmingly conclusory. Plaintiff fails to offer any facts regarding alleged representations, that they were false or material, or that Eaton had an intent for Plaintiff to act upon them. Plaintiff's Complaint does not even establish with any specificity *Plaintiff's own actions* that would support this claim, failing to move beyond the conclusory statement that Plaintiff "reasonably relied" upon unspecified representations and was "substantially harmed" as a result – a leap to a conclusion with no facts as a bridge. Prime pled none of these elements with particularity. Count IV of the Complaint should thus be dismissed.

WHEREFORE, Defendant, Eaton Corporation, respectfully requests the Court dismiss Plaintiff's Complaint with prejudice and for such other and further relief as this Court deems just.

---

[4] Again, Prime has failed to allege under which state's law it is bringing its claims. Eaton assumes for purposes of this discussion that Missouri law may apply. Under Missouri law, Plaintiff must plead, with particularized facts, each of the following elements: (1) a representation by Eaton; (2) the falsity of that representation; (3) its materiality; (4) Eaton's knowledge of the falsity; (5) Eaton's intent that the representation should be acted upon by Plaintiff; (6) Plaintiff's ignorance of the falsity of the representation; (7) Plaintiff's reasonable reliance on the truth of the representation; and (8) Plaintiff's consequent and proximately caused injury. *Sofka v. Thal*, 662 S.W.2d 502, 505 (Mo. 1983). Regardless of the applicable state law, Prime cannot plead the elements of a claim of fraudulent concealment or a cause of action for fraud with the requisite particularity.

Respectfully submitted,

SANDBERG PHOENIX & von GONTARD P.C.

By:    */s/  Jonathan T. Barton*
       Jonathan T. Barton, #47260
       600 Washington Avenue - 15th Floor
       St. Louis, MO  63101-1313
       314-231-3332
       314-241-7604 (Fax)
       jbarton@sandbergphoenix.com

AND

       Erik T. Koons (*Pro Hac Vice Admission Pending*)
       BAKER BOTTS LLP
       1299 Pennsylvania Avenue, NW
       Washington, DC 20004
       202-639-7973
       202-585-1086 (Fax)
       erik.koons@bakerbotts.com

       *Attorneys for Defendant*
       *Eaton Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on 30th day of December 2016 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Justin A. Collins
New Prime, Inc.
2740 North Mayfair
P.O. Box 4208
Springfield, MO  65808-4208
jcollins@primeinc.com

Stuart H. King
Hosmer King & Royce, LLC
313 South Glenstone Avenue
Springfield, MO  65802
stuart.king@hkrlawoffice.com

*Attorneys for Plaintiff*

                               */s/  Jonathan T. Barton*