UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| New Prime, Inc.<br>a Nebraska corporation,<br><br>   Plaintiff<br>v.<br><br>Eaton Corporation,<br>an Ohio corporation<br>and<br>John Does 1-100,<br><br>   Defendants. | Case Number 6:16-cv-03407-REL |

PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
DEFENDANT EATON CORPORATION'S MOTION TO DISMISS

**COMES NOW** plaintiff New Prime Inc., ("Prime"), by and through its attorneys of record, HOSMER KING & ROYCE, LLC and Justin A. Collins, and for its Suggestions in Opposition to defendant Eaton Corporation's Motion to Dismiss, states to the Court as follows:

**Background:**

Prime is a large interstate trucking company, offering its transportation services to all 48 contiguous United States. Each year, Prime purchases thousands of Class 8 truck units. Such equipment is purchased from OEM's that outfit their tractor equipment with Eaton transmissions. Defendant Eaton does, and has for several decades, manufactured and sold Class 8 truck transmissions into the stream of commerce. The barriers to entry in this Class 8 transmission market space are substantial, if not virtually insurmountable.

Truck purchasers, including Prime, indicate which make and model of the various truck component parts they desire to have installed in the truck unit. These truck purchasers ultimately select

1

the constituent parts of Class 8 tractor equipment from an OEMs "databook." Were the purchaser to have a preference for an unlisted transmission for the period at issue, it would have been informed by the OEM that such a part was either unavailable or priced at a cost prohibitive level. This, then, afforded Eaton total, or virtually total, market share, while enriching OEMs based on the terms of the exclusivity contracts.

Prime seeks recovery for damages suffered by it as a result of the conspiracies between defendants Eaton and unnamed OEMs to exclude competition in the Class 8 truck transmission market. An evidentiary record of this exclusionary conduct in the instant case is found in prior litigation. *ZF Meritor LLC and Meritor Transmission Corp. v. Eaton Corp.* ("*ZF Meritor*"), Civ. No. 06-623-SLR. (D. Del. Aug. 4, 2011).

Defendant offers varied claims in its Motion to Dismiss that its agreements and conduct with OEMs were not exclusionary. Defendants contend that its actions were legal, or at least were not anticompetitive. With respect to its OEM exclusivity contracts, this too is squarely disproved by prior litigation.

Defendant argues that the alleged conspiracy is not just implausible, but entirely illogical, because, as a matter of law, there can be found no economic rationale for the OEMs to conspire to maintain its monopolistic dominion over the Class 8 transmission segment. Remarkably, the exclusivity arrangement between Eaton and its OEM co-conspirators was reduced to writing. These exclusivity contracts make clear that Eaton and each OEM not only had full awareness of their conspiracy, but endeavored to ensure that it succeeded.

The OEMs so acted not in the face of any threat from Eaton; but rather, in search of sizeable windfall proceeds that would have escaped each OEM entirely in the absence of such a conspiracy. As a direct result of this illegally conspiracy, Prime suffered from the lack of competition in the Class 8

transmission market by paying artificially augmented purchase prices. Moreover, Prime was deprived of *any* meaningful competitive consumer choice in the Class 8 transmission market segment.

Prime's charges against Eaton have between litigated against the Defendant in *Meritor*. Meritor, as a direct competitor, was illegally expelled from the Class 8 transmission market segment. Aside from Meritor's situation as a manufacturer, and its damages stemming from its revenue loss resulting from market expulsion, the theories of defendant Eaton's misconduct, as they apply to antitrust violations in the Class 8 transmission market segment, are virtually identical to that of the Meritor case.

The OEMs were in no manner coerced or otherwise threatened by Eaton to enter into exclusive dealing agreements. Instead, the OEMs voluntarily negotiated the terms of such arrangements. As a product of OEM direct involvement in the exclusionary conspiracy, Prime was caused direct harm and possessed direct standing to pursue its antitrust claims against conspiring defendants.

**The Complaint Must be Taken as True:**

Defendant's petition to dismiss for failure to state a claim is governed by Federal Rule of Civil Procedure 12(b)(6). The factual allegations offered by Prime in its complaint are presumed true and Defendant's motion may only succeed should the Prime fail to state a claim upon which relief may be granted. This Court must accept as true all factual allegations in the complaint and view them in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The sole purpose of a Rule 12(b)(6) motion to dismiss is to challenge the legal sufficiency of the complaint. Prime can only be shown to have failed to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive Eaton's motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001)("A motion to dismiss under Rule

3

Case 6:16-cv-03407-SRB    Document 12    Filed 01/13/17    Page 3 of 15

12(b)(6) shall not be granted "unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief").

When considering a motion to dismiss, the Court must take the complaint's material allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff. *Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 917 (8th Cir. 2008). As it respects the sufficiency of particularized pleading, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993). Prime's complaint does, therefore, squarely satisfy the notice pleading standards imposed by the Federal Rules of Civil Procedure, as Prime sufficiently states a claim under each petitioned count in its Complaint.

As it respects federal pleading standards, "a complaint need not provide an exhaustive roadmap of a plaintiffs claims." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007). Instead, the pleader is required to meet a standard under which the pleading of a claim "simply calls for enough fact to raise a reasonable expectation that discovery will reveal [evidence of the claim]." *Bell Atlantic. Corp. v. Twombly, 550 U.S.* 544, 555, (2007). In the instant action, Prime petitions for relief in a manner that exceeds the requirements of *Twombly*, 550 U.S. 544, 555, as "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see also Gardner v. First American Title Ins. Co.* (8th Cir. 2002); *Stanturf v. Sipes*, 335 F.2d 224, 230 (8th Cir.1964).

Defendant cites an assortment of authorities that state the standard for a well-pleaded complaint. Defendant bluntly contends that Prime's complaint is conclusory, or, at best, falls below the speculation threshold. Eaton Br. ¶¶ 2, 3, 12, 15. But defendant fails to particularly identify what allegations are

4

conclusory or speculative. Defendant similarly fails to state which common law claims are not plead with sufficient specificity.

Prime's complaint contains sufficiently detailed factual allegations in paragraphs 15-35. Such factual bases form the pleading foundations for the violations discussed in paragraphs 36-70. Prime's Complaint provide a short and plain statement of the claims, entitling Prime to its day in court. *See Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(the Plaintiff must offer "a short and plain statement of the claim showing that the pleader is entitled to relief."); *see also Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *Phipps v. FDIC,* 417 F.3d 1006, 1010 (8th Cir.2005). Defendant's Motion to Dismiss on the basis that Prime has failed to adequately plead its complaint, should, therefore, be denied.

**The Co-Conspirator Exception to Illinois Brick Applies:**

Two actors were involved with the sale of Eaton's Class 8 transmissions: Eaton and the co-conspiring OEM's. The OEMs, as immediate resellers of transmissions sold directly to Prime. Prime directly purchased all Class 8 transmissions from an OEM whose participation as a complete "co-conspirator" makes the purchasing nexus direct. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254-55 (3d Cir. 2010). Prime does, therefore, have standing as a direct purchaser to bring action against the damaged Defendant co-conspirators. *See Insulate v. Advanced Finishing Systems* No. 14-2561 (8th Cir. 2015).

Prime pleads, and the evidentiary record from *Meritor* supports, that the OEMs were completely involved in the conspiracy to exclude Meritor (and others). Compl. ¶¶ 21, 23, 32. By the late 1990's, Eaton and its OEMs were of the same mind in declaring Meritor as a direct threat to their bottom lines. Acting in complete concert, Eaton and the co-conspiring OEMs then endeavored to eliminate Meritor in an effort to bolster Eaton's monopolistic presence in the Class 8 transmission market. Eaton and the

5

OEMs facilitated their conspiracy by entering into exclusivity contracts that memorialized their intent to eliminate Meritor from the competition picture. Defendants' conspiracy worked, as they eliminated Meritor from any meaningful inclusion with Class 8 tractor equipment manufactured by the OEMs.

Here, the OEMs were fully involved in the conspiracy from its inception. And the OEMs fully appreciated that in order for Eaton to wield full monopoly market share, each OEM had to agree to expel Meritor in its transmission inclusion/pricing practices.

Eaton argues that Prime is an "indirect purchaser". Eaton Br. ¶¶ 1, 4. As an "indirect purchaser," Defendant contends that Prime lacks standing under *Illinois Brick* to recover the overcharges caused by Defendants' conspiracy. For the reasons discussed herein, Defendant's classification of Prime as an indirect purchaser is incorrect. Prime purchased Class 8 transmissions directly from Eaton's co-conspiring OEMs. Recognized is the "co-conspirator exception" to *Illinois Brick*, any purchaser of a completely conspiring direct purchaser is also to be treated as a direct purchaser. The co-conspirator exception is entrenched, authoritative law in the jurisdiction of the instant action. *See Insulate v Advanced Finishing Systems* No. 14-2561 (8th Cir. 2015) (where "Our court has suggested that indirect purchasers may bring an antitrust claim if they allege the direct purchasers are "party to the antitrust violation" and join the direct purchasers as defendants.")

Prime has standing to recover overcharges caused by an anticompetitive conspiracy if it purchased from resellers (like the OEMs) that were "completely involved" in the alleged conspiracy. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l,* Inc., 602 F.3d 237, 259 (3rd Cir.2010). Such recognition that purchasers from "truly complete" participants in an antitrust conspiracy have standing is recognized law. *See Bateman Eichler v. Berner*, 472 U.S. 299 (1985) at 309–10, 105 S.Ct. 2622, where the Court stated "the co-conspirator exception applies to suits brought by indirect purchasers when there are allegations of conspiracy, the co-conspirators are joined as co-defendants, and the

6

middleman's involvement is truly complete, i.e., the middleman is "at least substantially equal[ly] responsible[le] for the violation" as the seller.

The co-conspirator exception has been recognized in settings where resellers had a more attenuated conspiratorial relationship than in the instant action. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l,* Inc., 602 F.3d 237, 259 (3rd Cir.2010) ("Hess II "), where a broad network of scattered dental products dealers were determined to be complete co-conspirators upon the court's rationale that "As we explained in Hess I, the Plaintiffs could come within Illinois Brick's coconspirator exception only if the Dealers were precluded from asserting claims against Dentsply because their participation in the conspiracy was 'truly complete.'"

Eaton cannot, in good faith, argue that the OEMs were not "completely involved" in the alleged conspiracy. Given the binding exclusivity contracts cited by Prime in its complaint, Defendant cannot genuinely maintain that such "complete involvement" assertions to be conclusory or speculative. Compl. ¶¶ 21, 23, 32.

Prime's complaint makes clear that OEMs were directly and completely involved in every aspect of the conspiracy to exclude Meritor throughout the entire course of the conspiratorial plot and execution of the conspiracy. Compl. ¶¶ 33. Prime also provide articulated reason that the OEMs, acting as co-conspirators, were so completely embroiled in conspiracy with Eaton that no plausible basis whatsoever can be advanced as to how the OEMs might, as direct purchasers, litigate anti-trust claims against Eaton.

A plain reading of Prime's complaint reveals the following: the direct purchaser OEMs were complete participants in the exclusionary scheme. Compl. ¶¶ 23, 28. Any suggestion that the OEMs would, ***or even could***, present an actionable case against defendant Eaton would be exposed as transparently disingenuous. *See Dreibus v. Wilson,* 529 F.2d 170, 174 (9 Cir. 1975) (dismissing

7

antitrust complaint filed by a co-conspirator because "[t]he complaint reveals a degree of involvement so great that it would constitute a defense to an antitrust claim based on the establishment of an exclusive distributorship.").

Purchases from direct purchasers, who were "completely involved" in the alleged exclusionary scheme forged with the co-conspiring manufacturers, who would otherwise lack standing to assert antitrust claims against the manufacturer, are permitted to do so under the co-conspirator exception. *See Royal Printing Co v Kimberly-Clark Corp.,* 621 F.2d 323, 326 (9th Cir. 1980) ("indirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue," relying on the seller's control of the direct purchaser").

The OEMs, as direct purchasers, would not, and more importantly, could not bring an antitrust suit in such circumstances. Such a reality alone guards against the prospect of simultaneous lawsuits by direct and indirect purchasers Seeking damages for the same conduct. *See Freeman v. San Diego Ass' of Realtors, 322* F.3d at 1145-46 (9th Cir. 2003) (""indirect purchasers can sue for damages if there is no realistic possibility that the direct purchaser will sue," relying on the seller's control of the direct purchaser. ) No damages apportionment tracing need to be performed either. To this point, the instant case shares many common features of *In re ATM Fee Antitrust Litig* (where the court found the co-conspirator exception was found to be something of a misnomer as "The consumers confine their claim for damages ... solely to that overcharge resulting from a retail level price-fixing conspiracy. There is no need to apportion that overcharge because it was not passed on to the consumers through any other level in the distribution chain."). *See Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.), 686 F.3d 741.* (9th Cir. 2012).

Prime has standing to bring action against defendant Eaton under the "co-conspirator" exception to *Illinois Brick. See Insulate v. Advanced Finishing Systems* No. 14-2561 (8th Cir. 2015). By so doing,

Prime proceeds under a single claim against all parties involved in the conspiracy. Instead of duplicative litigation, this distills such action into a singularly styled litigation that allows for consistent, expeditious, and equitable prosecution.

Common policy considerations at issue when determining the appropriate application of the co-conspirator exception commonly include: "(1) a risk of duplicative liability for defendants and potentially inconsistent adjudications…; (2) the evidentiary complexities and uncertainties involved in ascertaining the portion of the overcharge that the direct purchasers had passed on to the various levels of indirect purchasers… and (3) permitting direct and indirect purchasers to sue only for the amount of the overcharge they themselves absorbed and did not pass on would cause inefficient enforcement of the antitrust laws by diluting the ultimate recovery and thus decreasing the direct purchasers' incentive to sue. *See Cole's Wexford Hotel Inc. v. UPMC, et al (W.D. Pa 2010)*. In the instant case, no such policy drawbacks have any applicability *whatsoever*.

**Prime's Claims are Not Time-Barred**:

Defendant contends that all claims levelled in Prime's complaint are time-barred. Defendant's motion to have the case dismissed on statute of limitations bases must fail. *See Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 714 (Mo.Ct.App.2011) ("When the affirmative defense of the statute of limitations is asserted in a motion to dismiss, the complaint "may not be dismissed unless it clearly establishes 'on its face and without exception' that it is barred.")

The question of when Prime had notice of its harm is a triable question of fact. *See Stanley v. Lafayette Life Ins. Co.* (W.D. MO 2013); *see also Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo.2006); *Behan v. Firemen's Ret. Sys. of St. Louis*, 452 S.W.3d 218, 223–24 (Mo.Ct.App.2014). The clock begins to run on Prime's statute of limitations when its damages from the Defendants' conspiracy were capable of ascertainment. *See Kuehnle*, 92 S.W.3d at 139 ("When the fact

of damage becomes capable of ascertainment, the statute of limitations is put in motion.") Relatedly, judicial determination of what is capable of ascertainment and when such ascertainment can be deemed to have occurred accords with a "reasonably prudent person" standard. *See Powel*, 197 S.W.3d at 582, (where inquiry of plaintiff's ascertainment of harm hinges on whether his awareness of this matter "was sufficient to place a reasonably prudent person on notice of a potentially actionable injury"); *see also Gaydos v. Imhoff,* 245 S.W.3d 303, 307 (Mo.App. W.D. 2008) ("In order for the statute [of limitations] to accrue, plaintiff must have knowledge of the wrong and at least nominal damage, or [knowledge] of something that puts plaintiff on notice to inquire further."); *see also Izaak Walton League of Am., Inc. v. Kimbell,* 558 F.3d 751, 759 (8th Cir.2009) ("….a claim accrues "when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.")

Prime alleges that it directly purchased Class 8 transmissions and trucks containing Class 8 transmissions from OEM Defendants. Defendant Eaton's suggestion that Prime's failure to specify the precise dates of their purchases allows for every such purchase to fall outside the Sherman Act's four-year statute of limitations is advanced without any supportive authority. In fact, plaintiffs bear no duty to plead facts sufficient to avoid the affirmative statute of limitations defense. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely; *see also Blankenship v. Medtronic, Inc.* (E.D. Mo. 2013) WL 3818485.

Prime has no obligation to plead the precise dates of its purchases. No recognized theory exists to suggest that Prime's purchases must have occurred outside the statute of limitations, in the absence of an identified purchase date. The burden rests upon Defendant to prove the affirmative defense that an action is barred by the statute of limitations. If such a defense goes unpled by Defendant, courts may

10

dismiss a complaint upon such grounds only in those rare cases where the face of the complaint makes clear that the statute bars all claims. *Metropolitan St. Louis Equal Housing Opportunity Council v. Tillman*, 2007 WL 3046585 at *1 (W.D. MO 2007); *see also Ficken v. Golden,* No. 04-0350, 2005 WL 692019, at *3 (D.D.C. Mar. 24, 2005) (citing *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir.1996)) ("[T]he court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred and if 'no reasonable person could disagree on the date' on which the cause of action accrued.")

Defendant additionally contend Prime's allegations of fraudulent concealment to be "bare" and must therefore be dismissed. Eaton Br. ¶¶ 2. Understandably, Defendant overlooks that portion of the complaint where Prime describes the self-concealing nature of Defendants actions, Compl. ¶¶ 27-29. Prime also alleges that no exercise of reasonable due diligence would have revealed the essence of the conspiracy. Compl. ¶¶ 27. Here, then, Prime exceeds any required showing of fraudulent concealment. This is especially so considering that no discovery whatsoever had been conducted to date. Even under a more exacting standard of mere capability of discovery, as opposed to actual discovery, the statute of limitations calculus in the instant case is not changed, based on Defendant's concealment. *Lane v. Non–Teacher Sch. Employee Ret. System of Missouri, 174 S.W.3d 626, 634 (Mo.App. W.D.2005).*

Prime acknowledges that a certain level of particularity is required when pleading fraudulent concealment allegations. Still, Federal Rule of Civil Procedure 9(b) does not require plaintiffs to plead facts that were under defendants' exclusive control. *See Abels v. Farmers Commodities Corp,* (8th Cir. 2001). When antitrust co-conspirators like Eaton and OEMs scheme to keep their actions secret and actively mislead purchasers along the way, the conspiracy is said to be self-concealing. *See World*

11

*Wide Stationery Mfg. Co., Ltd. v. U.S. Ring Binder, L.P.* (E.D. MO 2009). Requiring particularized detail about every specific act in complaint would eviscerate the equitable tolling doctrine, rendering the vehicle of discovery as a redundant, if not entirely feckless, litigation device.

Prime is required to, and has, plead facts sufficient to demonstrate that is claims against Defendant are not baseless, and fulfills such a pleading requirement although the specific details are known and possessed by Defendants.

**Fraudulent Concealment Triggers Equitable Tolling:**

Defendant's intentional acts of covering up fraud and related wrongdoing stops the clock on with respect to statute of limitations. *Maloley v. R.J. O'Brien & Associates, Inc.,* 819 F.2d 1435, 1439 (8th Cir.1987)("It is settled law that in cases involving fraud, the cause of action does not accrue and the statute of limitations does not begin to run until the fraud is discovered or, upon reasonably diligent inquiry, should have been discovered.") There does not exist a one-dimensional litmus test for determining moment of discovery, whether constructive or actual. Instead a more holistic fact inquiry is applied. *Buder v. Merrill, Lynch, Pierce, Fenner & Smith,* 644 F.2d 690, 693 (8th Cir.1981) (Clearly, the totality of the information received by the plaintiffs is important. If the facts are such as to "excite inquiry," the "statutory period 'need not await [plaintiff's] leisurely discovery of the full details regarding [the] claim.'")

Defendant claims that no sooner than court filings become a matter of public record at some far corner of the United States, was Prime on notice. Such a proposition does not appear to have authoritative support. Even the publishing of blatantly adverse financial information into the public domain is insufficient. *See* Pinney v. Edward D. Jones & Co., Inc., *718 F. Supp. 1419* (W.D. Ark. *1989*) ("The court declines to hold that the mere existence in the public domain of adverse financial information concerning EMC is sufficient to begin the running of the statute of limitations. To do so would impute to

12

every investor constructive knowledge of all the information published in business periodicals or available to the public through securities filings.")

Prime does not deny that discovery of antitrust harm is available from diverse information sources. And while scouring court records is not plausible mechanism of harm discovery, media coverage could, and did, serve to place Prime on notice on October 24, 2012. While Defendant is free to challenge the date of discovery, such a dispute involves fact specific inquiry of manner and moment of notice. Such an enterprise is, of course, fact intensive and only given to case by case consideration. *See* Pinney v. Edward D. Jones & Co., Inc., *718 F. Supp. 1419* (W.D. Ark. *1989*). Issues of Prime's exercise of due diligence and constructive knowledge of harm is to be the subject of case by case resolution by the fact finder of such material fact disputes. Even with allegations of prominent, saturated news coverage, questions of moment of discovery involve material questions of fact that cannot be dispensed with at the summary judgment stage, let alone by a pre-discovery motion to dismiss. *See Pinney v. Edward D. Jones & Co., Inc., 718 F. Supp. 1419* (W.D. Ark. *1989*)

In the present action, the statute of limitations did not accrue before October 24, 2012. While it is state law that establishes the statute of limitations length, federal law governs when the limitations period accrues. *Wallace v. Kato,* 549 US 384, 127 S.Ct. 1091, 1095 (2007). Defendant's fraudulent concealment tolls the statute of limitations. The applicable statute of limitations is equitably tolled if the Prime could not have discovered the facts essential to the claims as a product of Defendant's fraudulent concealment. *Grant v. Colvin* (WD MO 2014) WL 3358476. Fraudulent concealment can be demonstrated by the Prime by showing that the Defendant concealed facts from the Prime. The elements to satisfy a fraudulent concealment claim are typically as follows:

> "To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, there must be something of an

13

Case 6:16-cv-03407-SRB   Document 12   Filed 01/13/17   Page 13 of 15

affirmative nature designed to prevent, and which does prevent, discovery of the cause of action…There can be no concealment which will prevent the running of the statute of limitations where the cause of action is known to the plaintiff or there is a presumption of such knowledge."
*Hasenyager v. Board of Police Com'rs of Kansas City* 606 S.W.2d 46824.

Even when courts find that the statute of limitations has been exhausted, equitable tolling may revive the viability of such claims when: "legal principles governing accrual have appeared to cause anomalous or unfair results to prevent a party that steals or breaches trust . . . from benefitting from its wrong." Id.

The factual allegations of the Prime's complaint demonstrate why the tolling exception to the limitations period applies as result of Defendant's fraudulent concealment. Compl. ¶¶ 27-29. The statute of limitations, must, therefore, in equity, be said to be tolled because no officer of Prime, its legal counsel included, could have reasonably discovered sufficient facts to ascertain the harm exacted upon it until October 24, 2012.

Prime argues that the statute of limitations accrued on, or after, October 24, 2012 when Meritor's appellate success against Eaton began to garner the sort of perceptible press coverage that did, or should have, put Prime on notice. Prime argues that questions of when a plaintiff has the requisite knowledge of harm hinges upon when it possesses "enough facts to be on notice of a potential claim; [the limitations period] does not await leisurely discovery of the full details of the alleged scheme." *Davidson v. Wilson,* 763 F.Supp. 1465, 1469 (D.Minn.1990). But when Defendant concealed the particulars of its wrongdoing, especially when it was still incented to do so, no level of scrutiny by Prime during the petitioned period of harm, would have led to actionable ascertainment or notice. Compl. ¶¶ 27-29.

Prime's claims against Defendant are timely and cannot be dismissed at this stage in the ligation. First, Prime sufficiently pleads a cause of fraudulent concealment that precluded it from ascertaining harm or damage against it before October 24, 2012. Compl. ¶¶ 27-29. Were equitable tolling disallowed

14

in the instant case, Defendant's active effort to conceal harm would not only be availing, but would effectively punish Prime for its inability to discover evidence for reasons entirely outside Prime's control.

## CONCLUSION

For all the foregoing reasons, the Court should deny defendants' Motion in all respects and award the Prime all such further relief as the Court deems just.

NEW PRIME, INC.

By: /s/ Justin A. Collins
Justin A. Collins
Missouri Bar Number 65388
2740 North Mayfair
Post Office Box 4208
Springfield, Missouri 65808-4208
Telephone: (417) 521-3162
Facsimile: (417) 521-5723
E-mail: JCollins@primeinc.com


HOSMER KING & ROYCE, LLC
By: /s/ Stuart H. King
Stuart H. King
Missouri Bar Number 39410
313 South Glenstone Avenue
Springfield, Missouri 65802
Telephone: (417) 869-9999
Facsimile: (417) 869-9999
E-mail: stuart.king@hkrlawoffice.com